IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDISON C. TATE, individually, and Gayle J. Tate, individually, as the spouse of Edison C. Tate,<br><br>  Plaintiffs,<br><br>v.<br><br>STATCO ENGINEERING AND FABRICATORS, INC., and PROCESS AUTOMATION DESIGN, INC. d/b/a PROCESS AUTOMATION, INC.,<br><br>  Defendants,<br><br>SIGMA PROCESSED MEATS, INC. and COMMERCE & INDUSTRY INSURANCE COMPANY,<br><br>  Intervenor Plaintiffs. | Case No. 12-CV-0002-JHP |

## OPINION AND ORDER

Before the Court are Defendant Statco Engineering and Fabricators, Inc's ("Statco") Motion for Summary Judgment, [Doc. No. 69]; Plaintiffs' Response in Opposition to Statco's Motion for Summary Judgment, [Doc. No. 81]; Defendant Process Automation Design, Inc.'s ("PAI") Motion for Summary Judgment, [Doc. No. 70]; Plaintiffs' Response in Opposition to PAI's Motion for Summary Judgment, [Doc. No. 70]; and PAI's Reply to Plaintiffs' Response, [Doc. No. 84]. Also before the Court are PAI's Motion in Limine, [Doc. No. 105]; Plaintiffs' Response in Opposition thereto, [Doc. No. 115]; and PAI's Reply to Plaintiff's Response, [Doc. No. 117].

After consideration of the briefs, and for the reasons detailed below, Statco's Motion for Summary Judgment, [Doc. No. 69], is **DENIED**, and PAI's Motion for Summary Judgment, [Doc. No. 70], is **GRANTED**. Further, PAI's Motion in Limine, [Doc. No. 105], is **MOOT**.

## BACKGROUND

### A. Procedural History

Plaintiffs commenced the instant action on October 25, 2011, seeking to recovery damages stemming from an industrial accident that occurred on October 23, 2010. Plaintiffs assert claims against Statco and PAI for (1) strict manufacturers products liability based on design defect and inadequate warning; (2) negligent design and failure to warn; (3) loss of consortium; and (4) punitive damages. On April 3, 2012, Third Party Plaintiffs Sigma Processed Meats, Inc. ("Sigma") and Commerce & Industry Insurance Company filed a Petition to Intervene pursuant to Fed. R. Civ. P. 24(a)(2), which was subsequently granted by this Court.

On June 14, 2013, Statco and PAI simultaneously filed Motions for Summary Judgment, [Doc. Nos. 69 and 70], seeking summary adjudication on all claims asserted by Plaintiffs. Plaintiffs filed their Responses in Opposition to Defendants motions on July 8, 2013, [Doc. Nos. 82 and 83], and PAI subsequently filed a Reply to Plaintiffs' Response, [Doc. No. 84]. These motions are now fully briefed and before the Court.

### B. Factual Background

In September 2009, Sigma hired Edison Tate as a maintenance supervisor responsible for utilities at the Sigma plant in Seminole, Oklahoma. The Sigma plant utilized the Amore Inox Ham Cook System (the "Process System"), a system designed, manufactured, and installed by Statco to cook hams using heated water. The Process System consist of, in relevant part, a 30,000-gallon tank of water heated to between 180 and 200 degrees Fahrenheit ("T101")

connected to a pump ("P-102") designed to circulate water through piping from T101 to be heated by a heat exchanger. A pneumatically powered control valve ("CV10101") is located at the base of T101, which, when closed, contains the heated water to T101. Within the engineering community, pneumatically powered control valves are generally known to be unreliable and subject to unexpected failure.[1] No warnings were placed on T101 or CV10101 regarding the dangers associated with CV10101's potential failure.

Although Statco designed, manufactured, and installed the Process System, it contracted with PAI, a component-part manufacturer, to design the user interface system. The user interface system of the Process System, also referred to as a programmable logic controller ("PLC"), electronically controls elements of the Process System, including CV10101. In relevant part, when the Process System is shut down using the PLC, the PLC is programed to send a signal to close CV10101 and shut down P-102.

On October 23, 2010, Mr. Tate was injured while attempting to replace leaky seals in P-102. Prior to starting the maintenance, Mr. Tate shut down the Process System using the PLC. On this occasion, however, CV10101 failed to close as designed. Assuming the valve was closed, Mr. Tate disconnected the pipe between CV10101 and the P-102 and was sprayed by scalding hot water, ultimately suffering significant burn-related injuries.

## DISCUSSION

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such

---

[1] The Court notes that there is no evidence to suggest that Sigma has any specialized knowledge with regard to the engineering intricacies of how the Process System operates.

that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

## A.  Defendant Statco

Statco seeks summary judgment as to Plaintiffs' products liability, negligent design, failure to warn, loss of consortium, and punitive damages claims. As explained below, the Court finds that Statco's Motion for Summary Judgment must be denied as to all claims asserted against it by Plaintiff.

### 1.  Strict Manufacturers Product Liability—Design Defect Claim

Plaintiffs assert a manufacturers products liability claim in strict tort based on the theory that the Process System's design rendered it defective. Specifically, Plaintiffs' design defect claim is based on Statco's failure to incorporate a redundant manual control valve on T101. The Oklahoma Supreme Court set forth three factors that a plaintiff must prove in order to establish a viable products liability claim.

> *First* of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.
>
> *Secondly,* Plaintiff must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. If the action is against the retailer or supplier of the article, then the Plaintiff must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.

> *Thirdly,* Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property as the term "unreasonably dangerous" is above defined.

*Kirkland v. General Motors Corp.*, 521 P.2d 1359, 1363 (Okla. 1974) (internal citation omitted). Further, "[u]nreasonably dangerous" is defined as "'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *Id.* at 1362–63 *(quoting* Restatement (Second) of Torts § 402A). Regarding causation, the Oklahoma Supreme Court has held that "[a] manufacturer's products liability plaintiff need not exclude all other possible conclusions. However, the mere possibility that a defect caused the injury is not sufficient." *Dutsch v. Sea Ray Boats, Inc.,* 845 P.2d 187, 191 (Okla. 1992). Circumstantial evidence, however, can provide sufficient proof of causation. *Chickasha Cotton Oil Co. v. Hancock*, 306 P.2d 330 (Okla. 1957); *Sadler v. T. J. Hughes Lumber Co., Inc.*, 537 P.2d 454 (Okla. Civ. App. 1975).

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Plaintiffs and making all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have presented evidence sufficient to meet their burden with regard to each element of a products liability claim. The Court finds that Plaintiffs have submitted sufficient evidence, through the testimony of Dr. Blundell, as well as the inferences that can be drawn from the circumstantial evidence presented, to create a genuine issue of material fact as to whether the Process System contained a design defect that caused Mr. Tate's injuries. Further, the Court further finds that Plaintiffs have submitted sufficient evidence, through the testimony of Mr. Tate, along with two other Sigma employees, to create a genuine issue of material fact as to whether a defect existed at the time the Process System was installed

by Statco. Accordingly, Statco's Motion for Summary Judgment as to Plaintiffs' design defect claim must be denied.

**2. Negligence—Design**

Plaintiffs also seek to recovery under a theory of negligent design, asserting that Statco failed to exercise due care in designing the Process System. In order to prevail on their negligence claim, Plaintiffs must show that defendant owed him a legal duty, defendant breached that duty, and such breach was the direct and proximate cause of plaintiff's injuries. *Lockhart v. Loosen,* 943 P.2d 1074, 1079 (Okla. 1997).

The threshold question for a negligence claim is whether the defendant owed a duty to the plaintiff. *Wofford v. E. State Hosp.*, 795 P.2d 516, 518 (Okla. 1990). Whether a duty is owed is a question of law for the court. *Id.* at 519. Under Oklahoma law, a manufacturer must exercise ordinary care in the design and manufacture of a product to protect foreseeable users of its products from foreseeable risks of harm. *See generally Royse v. Stine,* 473 P.2d 923, 925 (Okla. 1970) ("Since the defendants designed and built this machine, it was their duty to make it safe for those who were called upon to use it.") (citing *Crane Co. v. Sears,* 168 Okla. 603, 35 P.2d 916 (1934)).

The Court finds that the parties' evidentiary submissions support an inference that Mr. Tate's injuries were reasonably foreseeable by Statco. It is undisputed that Statco designed, manufactured, and installed the Process System and that Mr. Tate was among the class of intended and foreseeable users. Further, it is foreseeable that elements of the Process System would require periodic maintenance, including replacement of pump seals—the task Mr. Tate was attempting to complete at the time of his injuries. Further, it is undisputed that members of the engineering community are generally aware of the risk that pneumatically controlled valves,

such as CV10101 are subject to unexpected failure. Therefore, there is evidence sufficient to support a finding that Statco was aware, or should have been aware, of the risk that CV10101 might fail to close as designed. Given this evidence, a rational juror could conclude that Statco should have anticipated that a user might be injured while performing maintenance on the Process System if CV10101 failed to close. Accordingly, Statco owed a duty to exercise reasonable care in designing the Process System so as to protect against the risk that users would be exposed to the heated water as a result of CV10101's foreseeable failure.

The Court also finds that Plaintiffs has submitted evidence sufficient to support a finding that Statco breached the duty to exercise reasonable care in designing the Process system. In order to establish a breach, Plaintiffs must establish that the "design was unreasonable in light of the likelihood and magnitude of the foreseeable hazard and in light of the costs required to reduce or eliminate it." *Smith v. Cent. Mine Equip. Co.*, 876 F. Supp. 2d 1261, 1269 (W.D. Okla. 2012); *see also*, 57A Am. Jur. 2d Negligence § 8. In light of Dr. Blundell's testimony and expert report, the Court concludes a question of fact exists as to whether Statco exercised due care in designing the Process System. Further, Plaintiffs presented evidence that Statco failed "to conduct any type of hazard analysis or HAZOP related to the design and commissioning of the 'T101' … ." [Doc. No. 81, 9]. With regard to causation, as discussed above, the Court finds that a question of fact exists as to whether Statco's alleged failure to exercise due care was the cause of Mr. Tate's injuries.[2] Accordingly, Statco's Motion for Summary Judgment as to Plaintiffs' negligence design claim must be denied.

### 3. Failure to Warn Claims

---

[2] Whether a product defect caused harm to persons or property is determined by the prevailing rules and principles governing causation in tort, which are similar in both negligence and strict tort. *See* 63A Am. Jur. 2d Products Liability § 1306 ("Such a question is to be resolved under the prevailing rules and principles governing causation … .").

Plaintiffs also assert failure to warn claims against Statco based on its alleged failure to provide adequate warnings regarding the hazards of the Process System. Whether Plaintiffs are proceeding under a negligence or manufacturer's products liability theory, the relevant law concerning the adequacy of a product warning is similar. *See Grover v. Superior Welding, Inc.,* 893 P.2d 500 (Okla. 1995); *Berry v. Eckhardt Porsche Audi, Inc.,* 578 P.2d 1195, 1196 (Okla. 1978); *see also*, 53 A.L.R.3d 239 ("[I]t has been noted that notwithstanding the fact that there is no cross-reference from § 402A of the Restatement of Torts 2d (which sets out the strict tort liability doctrine) to § 388 of the Restatement of Torts 2d (which spells out the duty to warn in negligence actions), the principles applicable in the latter should be applicable to the former.").

When analyzing a negligent failure to warn claim, the general rule as to a supplier's duty to warn of known dangers in the ordinary use of its product is set out in Restatement of Torts (Second), § 388:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

A similar standard applies when analyzing a strict manufacturers products liability claim based on a defective warning. In *Duane v. Oklahoma Gas & Electric Company*, the Oklahoma Supreme Court explained,

> [O]nly where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a

> product sold without such warning is in a defective condition.... A duty to warn must also be based upon the foreseeability that the user would use the product in that way, the type of danger involved, and foreseeability of the user's knowledge of the danger.

833 P.2d at 286 (citing Restatement of Torts (Second), § 402A, Comment h). Accordingly, a manufacturer may be liable for selling or manufacturing a defective product if an unclear or inadequate warning fails to inform a user of an inherent or latent defect. *Smith v. United States Gypsum Co.,* 612 P.2d 251, 253–54 (Okla. 1980). However, if the manufacturer provides a warning that covers all foreseeable uses and the product would be safe if the directions were followed, a product is not defective under a failure to warn theory. *Id.* at 253. A manufacturer has no duty to warn users of an obvious danger or risk which an ordinary user would expect from any foreseeable use of a product. *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir. 1996); *Duane*, 833 P.2d at 286.

In the instant case, the dispositive issue is whether Statco had a duty to warn of the potential hazards associated with the design of the Process System. Statco concedes there was no warning on the process system regarding the dangers associated with the possibility that CV10101 might fail to close as designed. Furthermore, Statco does not specifically dispute that it had reason to anticipate the dangers associated with the possibility that CV10101 would fail to close as designed. Instead, Statco argues that it should be absolved of liability based on several doctrines that limit manufacturers' liability based on the characteristics of the purchaser or ultimate user. The Court addresses each these contentions below.

First, Statco argues that it had no duty to warn Mr. Tate because he was a knowledgeable user of the Process System. "The duty to warn of any dangerous character of their product arises only if they had no reason to expect those who use the product to discover the condition and realize the danger involved." *Duane*, 833 P.2d at 286 (citing *Mayberry v. Akron Rubber*

*Machinery Corp.,* 483 F.Supp. 407, 413 (N.D. Okla. 1979)). Statco argues that Mr. Tate was a knowledgeable user because he worked on these types of systems for more than 30 years; testified that he did not request any training regarding the Process System because it was easy to operate; and was aware of the potentially dangerous temperature of the water contained in the tanks. [Doc. No. 69, 15]. While these arguments suggest that he was generally familiar with how to work the Process System, they fail to address whether Mr. Tate, or an ordinary user of the Process System, would be aware of the propensity of pneumatically powered valves, such as CV10101, to experience temporary failures. There is no doubt that an ordinary member of the engineering community would know of the risk associated with pneumatically powered valves to fail and regard the lack of a manual valve as an obvious and glaring omission. However, the ordinary user of the Process System is not likely to be an engineer. Furthermore, Plaintiff submitted testimony of Jimmy Reich and Ryan Rattan, who also performed maintenance work at Sigma, stating that other maintenance personnel relied on CV10101 to close when conducting maintenance on the Process System, without draining T101. Viewing the evidence in a light most favorable to Plaintiffs, the Court cannot conclude as a matter of law that Mr. Tate was a knowledgeable user of Process System.

Second, Statco argues that it had no duty to warn because the purchaser of the Process System, Sigma, was a sophisticated purchaser. The sophisticated purchaser exception, also referred to as the bulk supplier defense, absolves suppliers of the duty to warn purchasers who are already aware or should be aware of the potential dangers. *Atkin v. Ashland Chem. Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998) (applying Oklahoma law) (citing *O'Neal v. Celanese Corp.,* 10 F.3d 249, 251–52 (4th Cir. 1993); *Davis v. Avondale Indus.,* 975 F.2d 169, 171 (5th Cir. 1992) (a manufacturer is not required to provide an adequate warning about his product when the user or

handler of the product already knows or reasonably should be expected to know of the characteristics of the product that may cause damage and the danger of such characteristics.); *Apperson v. E.I. du Pont de Nemours & Co.,* 41 F.3d 1103, 1108 (7th Cir. 1994)). The sophisticated purchaser defense only applies "when the danger related to the particular product is clearly known to the purchaser." 2 Madden & Owen, § 16:4. If the danger is clearly known to the purchaser, "[t]hen there will be no obligation to warn placed upon the supplier. Instead it becomes the employer's responsibility to guard against the known danger[.]" *Id.* In determining the appropriateness of relying upon a purchaser to provide cautionary information to the ultimate users,

> [t]here is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user.

2 Madden & Owen on Prod. Liab. § 16:4 (3d ed.) (citing Restatement Third, Torts: Products Liability § 2 comment h).

The sophisticated purchaser defense was applied by the Tenth Circuit in *Atkin v. Ashland Chemical Co.*, where plaintiffs, air force employees, contended that "they were injured while cleaning jet engine parts due to low-level, chronic exposure to defendants' chemicals" as a result of the defendant's failure to warn the "potential users of the dangerous propensities of these chemicals." 156 F.3d at 1037. The Tenth Circuit explained:

> We read Oklahoma case law to impose no duty to warn a purchaser as knowledgeable as the United States Air Force of the potential dangers of low-level chemical exposure. Plaintiffs rely on the argument that the Air Force did not actually know of the risks involved in low-level chemical exposure. However, Oklahoma law clearly imposes a "should have known" standard as well, applicable to "knowledgeable purchasers." This is tantamount to the familiar "sophisticated purchaser defense" exception which is based upon the principles

11

> set forth in the Restatement (Second) of Torts. This exception absolves suppliers of the duty to warn purchasers who are already aware or should be aware of the potential dangers. … "[A] duty to warn arises only when there is unequal knowledge with respect to the risk of the harm."

*Id*. (internal citations omitted). Applying the principles of the sophisticated purchaser doctrine, the Tenth Circuit concluded,

> Because of the wealth of research available, the ability of the Air Force to conduct studies, and its extremely knowledgeable staff, we find that the Air Force easily qualifies as a "knowledgeable purchaser" that should have known the risks involved with low-level chemical exposure. Employees of the Air Force are also deemed to possess the necessary level of sophistication, so that defendants had no duty to warn the Air Force or its employees of the potential hazards.

*Id.* Accordingly, there was no duty to warn either the Air Force or its employees as a matter of law.[3] The Court finds insufficient evidence in the record to summarily conclude that Sigma was a sophisticated purchaser. Significantly, there is little or no evidence regarding Sigma's general level of sophistication. Statco failed to include any information regarding Statco's organizational characteristics or level of sophistication in its "Statement of Uncontroverted facts." [*See* Doc. No. 69, 1-5]. Further, the Court could locate no evidence in the record to establish that Sigma had knowledgeable staff aware of the risks associated with pneumatically controlled valves like CV10101.[4] As such, the Court, viewing the evidence in a light most favorable to Plaintiffs as the non-moving party, the Court cannot conclude that Statco's liability is limited by the sophisticated purchaser doctrine.

---

[3] *Duane*, 833 P.2d at 287 ("If no warning is required to be given by the manufacturer to a purchaser who is well aware of the inherent dangers of the product, there is no duty on the part of the manufacturer to warn an employee of that purchaser.") (citing *Marker v. Universal Oil Prod. Co.,* 250 F.2d 603 (10th Cir.1957); *Mays v. Ciba-Geigy Corp.,* 661 P.2d 348 (1983)).

[4] Although the Court reviewed the record in search of facts helpful in making this determination, the parties are reminded that the Court has no duty to search the record in an attempt to locate the facts necessary to validate unsupported contentions. *See* Fed. R. Civ. P. 56(c)(3). As aptly explained by the Seventh Circuit: "[j]udges are not like pigs, hunting for truffles buried in briefs." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Accordingly, litigants make arguments without direct citation to necessary factual support at their own peril.

Finally, Statco argues that, even if there was a failure to provide an adequate warning, Plaintiffs cannot establish that an adequate warning would have prevented Mr. Tate's injuries. "The failure to adequately warn of a known potential risk renders a product defective; however, the plaintiff must establish that the failure to warn caused the injury." *Daniel*, 97 F.3d at 1332-33 (internal citations omitted). Under Oklahoma law, it is well established that Plaintiffs are entitled to a rebuttable presumption that Mr. Tate would have read and heeded an adequate warning.

> Oklahoma recognizes a rebuttable presumption that plaintiff would have read and heeded an adequate warning. Thus, in the absence of evidence rebutting the presumption, a plaintiff need not produce evidence that she would have acted differently if an adequate warning had been given. But once the opposing party meets its burden to come forward with evidence rebutting the presumption, the presumption disappears.

*Id.* at 1332. Statco points to Dr. Blundell's testimony, arguing that Plaintiffs cannot establish the lack of an adequate warning on the Process System caused Mr. Tate's injuries. Upon reviewing the testimony cited, the Court finds that Dr. Blundell's testimony merely affirms the obvious proposition that a warning will not be effective in preventing an accident if it is not heeded. The Court finds this evidence insufficient to rebut the presumption that Mr. Tate would have read and heeded an adequate warning on the Process System.

For the foregoing reasons, Statco's Motion for Summary Judgment as to the failure to warn claims, both in strict tort and negligence, must be denied.

**4. Punitive Damages**

Statco seeks a summary determination that Plaintiffs cannot prevail on their claim for punitive damages. Under Oklahoma law, punitive damages are not recoverable unless a jury finds by *clear and convincing evidence* that the defendant acted with "reckless disregard of the rights of others" or "intentionally and with malice towards others." 23 Okla. Stat. § 9.1(B)(1),

(C)(1), (D)(1). A person acts with reckless disregard of the rights of others if he is aware of a "substantial and unnecessary risk that his conduct would cause serious harm to others." *Therrien v. Target Corp.,* 617 F.3d 1242, 1259 (10th Cir. 2010) (quotation omitted). This requires a plaintiff to establish that the defendant's conduct "created a high probability of serious harm to another person." *Id.*

The Court finds that because the issue of punitive damages pertains only to available relief rather than impacting the validity of an entire claim or defense, and Plaintiffs' evidence suggests at least an arguable basis for such a recovery, it is premature to decide the availability of punitive damages at this time. Therefore, Statco's Motion for Summary Judgment will be denied as to the punitive damages issue.

**5. Loss of Consortium**

Finally, Plaintiffs' loss of consortium claim is not appropriate for summary adjudication because, as a derivative claim, it only fails if Statco is exonerated from liability for the other substantive claims. As outlined above, Statco's Motion for Summary Judgment as to the substantive claims is denied; consequently, Statco's Motion for Summary Judgment must also be denied as to Plaintiffs' loss of consortium claim.

**B. Defendant PAI**

PAI seeks summary judgment on the strict manufacturers product liability and negligence claims asserted against it by Plaintiffs. At the outset, the Court notes that PAI's status as a component-parts manufacturer is significant to determining whether PAI may be held liable in strict tort or negligence for Plaintiffs' damages. As explained in detail below, the Court finds that PAI's Motion for Summary Judgment must be granted as to all claims asserted against it by Plaintiff.

**1. Defect Claims—Strict Manufacturers Products Liability and Negligence**

The Court first addresses Plaintiffs' argument that PAI is subject to liability in strict tort and negligence because it injected a defective product into the stream of commerce. Generally,

> [a] manufacturer of a component part of an assembled final product may be held liable for injuries proximately caused by a defect in the part under negligence, strict liability, and warranty theories, where it is shown that the component was defective or unreasonably dangerous when it left the component supplier's control, and that the defect in the component caused the accident.

*McCloud v. Terex Telelect, Inc.*, CIV-08-433-D, 2010 WL 3515678, * 2 n. 2 (W.D. Okla. Aug. 31, 2010) (citing 63 Am. Jur. 2d *Products Liability* § 148).[5]

The Court finds that Plaintiffs have failed to present evidence sufficient to create a genuine question of fact regarding the existence of a defect in the design or manufacture of the PLC. Specifically, the testimony of both Dr. Martens and Mr. Boyd, identified by Plaintiffs for the proposition that "[t]here is evidence that the 'PLC' malfunctioned causing the 'CV10101' not to close," [Doc. No. 82, 16], establishes only the *possibility* of a PLC malfunction. "[W]ithout adequate expert testimony as to the existence of defect and causation, the jury is left to speculate about possibilities regarding these essential elements, rather than appropriately focusing on probabilities." *Carver v. Kia Motors Corp.*, No. 10-CV-642-JHP, 2012 WL 90090 (N.D. Okla. Jan. 11, 2012). Because Plaintiffs' evidence merely establishes a remote possibility that a malfunction in the PLC led to Mr. Tate's injuries, the Court finds that Plaintiffs cannot establish a defect in the PLC.

---

[5] Although the Court regards Plaintiffs' products liability and negligent design claims as distinct claims for relief, both claims fail if Plaintiffs fail to establish a defect. Indeed, PAI cannot be held to have breached the duty to produce a non-defective product if Plaintiffs cannot establish the existence of a defect in the PLC. *See* 1 Madden & Owen on Prod. Liab. § 2:1 (3d ed.) (citing *Oanes v. Westgo, Inc*., 476 N.W.2d 248, 253 (N.D. 1991); *Romero v. International Harvester Co.*, 979 F.2d 1444 (10th Cir. 1992)) ("[I]n order to establish breach, the plaintiff in a negligence case generally must prove both defect *and* negligence: that is, (1) that the product was *defective* (in its design, manufacture, or marketing), and (2) that the manufacturer was *negligent* in some manner in allowing the product to be manufactured and sold in a defective condition.").

Plaintiffs also contend the PLC was defective because PAI failed to select a safer type of PLC to be integrated into the Process System. But it is well-established that "merely because a product could be made 'safer' does not mean it posed an unreasonable danger to the ordinary consumer who used it." *Braswell v. Cincinnati Inc.*, 12-5128, 2013 WL 5303260 (10th Cir. Sept. 23, 2013) (citations omitted). Instead, the relevant inquiry is whether the product distributed was unreasonably dangerous or defective. As explained above, Plaintiffs cannot establish that the PLC distributed by PAI was unreasonably dangerous. Accordingly, the Court finds evidence that a safer type of PLC could have been selected insufficient to establish a defect in the PLC.

The Court also finds that PAI cannot be held liable in negligence or strict tort for defects in the end product design of the Process System. Plaintiffs assert the PLC was unreasonably dangerous because there was no redundant manual valve on T101 or "proof of closure" switch on CV10101. The primary purpose of a proof of closure switch is to detect the position (open or closed) of a valve, thereby alerting the user of the Process System if CV10101 failed to close as designed. But the proof of closure switch would have been incorporated into the design of T101, not the PLC. Thus, the issue is whether PAI, a component-part manufacturer, is responsible for this failure to incorporate a safety device.

As a component part manufacturer PAI may only be liable for design defects in the finished product under certain circumstances.

> Where a supplier furnishes a component part free of defects and without knowledge of the design of the end product, strict liability should not be imposed on the supplier for injury resulting from the end product design. For example, strict liability should not extend to the manufacturer or supplier of a rotary saw blade free of defects when it is determined a subsequent manufacturer of the rotary table saw failed to incorporate a common safety guard in its exclusive design.

*Mayberry*, 483 F. Supp. at 413. On the issue of whether the component-part or end-product manufacturer has the responsibility for the installation of safety devices, the court looked at three

primary factors: (1) trade custom—at what stage is that device generally installed; (2) relative expertise—which party is best acquainted with the design problems and safety techniques in question; and (3) practicality—at which stage is installation of a device most feasible.  8 Okla. Prac., Product Liability Law § 9:2 (2012 ed.) (citing *Mayberry*, 483 F. Supp. at 413).  Based on the evidence in the record, the Court finds that each of these factors weighs in favor of finding Statco responsibility for installation of safety devices on the Process System.  Accordingly, PAI is not subject to liability based on Statco's failure to incorporate a proof of closure switch or redundant manual safety valve into the overall design of the Process System.

## 2. Failure to Warn Claims

The Court finds that Plaintiffs' failure to warn claims, both under strict tort and negligence, must be dismissed because PAI had no duty to warn of the dangers of products it did not manufacture.  As explained above, Oklahoma follows the principles set out in Restatement (Second) of Torts, § 388 with regard to determining whether a manufacturer or supplier owes a duty to warn in negligence.  Significantly, pursuant to § 388, a supplier or manufacturer's duty to warn is limited to "known dangers in the ordinary use of ***its product*** … ."  *Duane*, 833 P.2d at 286 (emphasis added).  As such, "[u]nder the language of § 388 … the duty to warn is limited to those in the chain of distribution of the hazardous product."  *Simonetta v. Viad Corp.*, 165 Wash. 2d 341, 354, 197 P.3d 127, 134 (2008) (citing *Cleary v. Reliance Fuel Oil Assocs.,* 17 A.D.3d 503, 793 N.Y.S.2d 468 (N.Y. App. Div. 2005); *In re Deep Vein Thrombosis,* 356 F.Supp.2d 1055, 1067-68 (N.D. Cal. 2005); *Blackwell v. Phelps Dodge Corp.,* 157 Cal. App. 3d 372, 203 Cal. Rptr. 706 (1984); *Walton v. Harnischfeger,* 796 S.W.2d 225 (Tex. Ct. App. 1990); *Cipollone v. Yale Indus. Prods., Inc.,* 202 F.3d 376 (1st Cir. 2000)).  Because PAI did not

manufacture, sell, or supply the hazardous components of the Process System, it had no duty to warn under § 388.

Further, under the principles of strict manufacturers products liability, manufacturers of non-defective component parts generally have no duty to warn unless the supplier of the component "substantially participates in the integration of the component into the design of the product." *Swift v. Serv. Chem., Inc.*, — P.3d — (Okla. Civ. App. Sept. 10, 2013) (citing Restatement (Third) of Torts, § 5); *see also*, *Mayberry*, 483 F. Supp. at 413. Here, Plaintiffs failed to demonstrate that PAI was substantially involved in the integration of the PLC into the design of the Process System. Therefore, the Court finds that PAI has no duty to warn of the dangers associated with the overall design of the Process System. Accordingly, PAI is entitled to summary judgment as to Plaintiffs' failure to warn claims.[6]

## CONCLUSION

For the reason's outlined above, Statco's Motion for Summary Judgment, [Doc. No. 69], is **DENIED**, and PAI's Motion for Summary Judgment, [Doc. No. 70], is **GRANTED**. Further, PAI's Motion in Limine, [Doc. No. 105], is **MOOT**.

**IT IS SO ORDERED** this 25th day of November, 2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[6] Because the Court finds that PAI is entitled to summary judgment as to Plaintiffs' substantive claims, Plaintiffs' remaining derivative claims for relief—loss of consortium and punitive damages—must also be dismissed.