# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDISON C. TATE, individually, and Gayle J. Tate, individually, as the spouse of Edison C. Tate, <br><br>    Plaintiffs, <br><br>v. <br><br>STATCO ENGINEERING AND FABRICATORS, INC., and PROCESS AUTOMATION DESIGN, INC. d/b/a PROCESS AUTOMATION, INC., <br><br>    Defendants, <br><br><br>SIGMA PROCESSED MEATS, INC. and COMMERCE & INDUSTRY INSURANCE COMPANY, <br><br>    Intervenor Plaintiffs. | Case No. 12-CV-0002-JHP |

## OPINION AND ORDER

Before the Court are Defendant Statco Engineering and Fabricators, Inc's ("Statco") Motion in Limine [Doc. No. 80]; Plaintiffs' Motion in Limine [Doc. No. 106]; Statco's Motion to Exclude Testimony of J. Kenneth Blundell [Doc. No. 131]; Plaintiffs' Motion to Strike or Exclude Evidence Untimely Disclosed by Statco [Doc. No. 162]; Plaintiffs' Motion in Limine Regarding Defendant's Trial Exhibit Numbers 45, 51, and 52 [Doc. No. 176] and Statco's Motion to Permit Jury to View Scene [Doc. No. 178]. Also before the Court are various legal

issues raised at the Pretrial Conference held on January 30, 2014, which were briefed in the parties supplemental trial briefs.[1] [*See* Doc. No. 173.]

## BACKGROUND

The long procedural history of this case is detailed in the Court's November 25, 2013 Opinion and Order. [*See* Doc. No. 119.] Following the Court's November 25, 2013 Opinion and Order denying Statco's Motion for Summary Judgment, the Court held a Status and Scheduling Conference on December 12, 2013. [Doc. No 124.] In light of the prolonged posture of the case, the Court set the case for trial on the February 10, 2013 Trial Docket. [Doc. No. 125.] On December 13, 2013, the Court entered an Order outlining the following deadlines:

> Motions in Limine and Daubert issues to be filed by 12/19/2013, with responses by 12/27/2013; Final Exhibit Lists to be filed and exhibits exchanged by 1/15/2014; Agreed Jury Instructions due by 1/15/2014; Trial Briefs (to include disputed jury instruction issues) due by 1/15/2014; Designations and Counter-Designations due by 1/15/2014 and objections due by 1/18/2014; Agreed Pretrial Order due by 1/27/2014. Pretrial Conference is set for 1/30/2014 at 10:00 AM in Chambers, Room 201, US Courthouse, 5th & Okmulgee, Muskogee, OK before District Judge James H. Payne. Jury Trial is set for 2/10/2014 at 9:00 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before District Judge James H. Payne.

[Doc. No. 125.] Despite having agreed to a February 10, 2014 trial date, Statco filed a Motion for Continuance of Trial Date and Entry of New Scheduling Order [Doc. No. 130] one week after the Status and Scheduling Conference. On January 3, 2014, after considering the parties' arguments on the matter, the Court denied Statco's request to continue the trial. [Doc. No. 137.]

---

[1] On January 15, 2014, Statco filed its first Trial Brief [Doc. No. 148], wherein it included only four sentences regarding its theory of the case. The Court noted the unhelpful nature of this brief at the January 30, 2014 Pretrial Conference, and directed Statco to submit a more detailed trial brief. On February 5, 2014, Statco submitted its Extended Trial Brief [Doc. No. 184], which failed to include *any information* regarding Statco's theory of the case. While Statco may regard a proper trial brief as perfunctory, information regarding Statco's theory of the case is necessary for the Court's trial preparation. Statco is hereby directed to file a proper trial brief laying out its theory of the case in a manner that would be helpful to the Court's preparation for trial no later than 9:00 a.m. on February 10, 2013.

2

On January 27, 2014, the parties submitted an Agreed Pretrial Order to the Court for consideration. After an exhaustive review of the Agreed Pretrial Order, the Court identified numerous concerns with the Agreed Pretrial Order. On January 30, 2014, the parties appeared for the Pretrial Conference, at which the Court thoroughly reviewed these issues with the parties. The Court also viewed some of the demonstrative evidence Statco intended to present at trial, including three computer generated animations created by Fearless Eye. Furthermore, the Court directed the parties to re-submit a Second Agreed Pretrial Order along with Amended Trial Briefs addressing specific issues raised at the Pretrial Conference.

## DISCUSSION

### A. Statco's Motions in Limine

The Court addressed the majority of the issues raised in Statco's Motion at a hearing held on February 4, 2014. [*See* Doc. No. 182.] The remaining issue is addressed below.

### 1. Prior Rulings, Statements, or Actions Made by the Court

The Court finds all prior rulings, statements, or actions inadmissible pursuant to Fed. R. Evid. 401, 402, and 403. Accordingly, Statco's Motion in Limine regarding exclusion of this Court's prior rulings, statements, or actions is **GRANTED.**

### B. Plaintiffs' Motions In Limine

The Court addressed the majority of the issues raised in Statco's Motion at a hearing held on February 4, 2014. [*See* Doc. No. 182.] The remaining issue is addressed below.

### 1. Reference to Anything Other than the Actual Billed Amount of Plaintiffs' Medical Expenses

It is undisputed that the amount billed to Plaintiff by medical providers was approximately $440,000.00, but the amount actually paid and accepted by those providers pursuant to the fee schedule developed by the Oklahoma Workers' Compensation Court

Administrator was only $257,868.12. The difference between the amount billed and the amount paid is approximately $182,000, which has been ostensibly written off by the medical providers. Statco argues that because Plaintiffs are not and have never been legally obligated to pay the difference, Plaintiffs are not entitled to seek that amount in damages. Plaintiffs argue that they are entitled to recover the amount billed pursuant to the collateral source rule.

The collateral source rule is probably best described in *Denco Bus Lines v. Hargis*, as follows:

> Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury.

229 P.2d 560 (Okla. 1951). However, Oklahoma courts have not specifically addressed the issue of whether the collateral source rule applies to Workers' Compensation Court write-offs.

Plaintiffs recognize that there is no Oklahoma authority addressing this issue, but argue that "Oklahoma decisions generally apply the collateral source rule broadly in favor of a plaintiff and exclude evidence of an alternative or collateral source that would lessen a plaintiff's damages." (Doc. No. 180, 2) (citing *Blythe v. Univ. of Okla.*, 82 P.3d 1021, 1026-27 (Okla. 2003) (applying collateral source rule in Workers' Compensation Court to exclude evidence that injured worker's medical expenses were paid by insurance); *Porter v. Manes*, 347 P.2d 210 (Okla. 1959) (evidence that a plaintiff's damages have been reimbursed or lessened by a contribution from a collateral source wholly independent of the defendant is not admissible); *Denco Bus Lines*, 229 P.2d at 564 (insurance benefits paid for by the injured plaintiff and not contributed to by the defendant are a collateral source)). None of these cases, however, specifically address Workers' Compensation write-offs.

With regard to other statutory schemes that reduce the amount recoverable by medical care providers, many courts have refused to apply the collateral source rule. *See* Michael W. Cromwell, Comment, *Cutting the Fat out of Health–Care Costs: Why Medicare and Medicaid Write–Offs Should Not be Recoverable Under Oklahoma's Collateral Source Rule,* 62 Okla. L.Rev. 585, 595 (2010). In *Compton v. Hale*, a case involving Medicaid write-offs, the Court held that "damages for medical care, treatment and services shall be limited to the medical expenses actually paid by or on her behalf." 2012 WL 5385680 (E.D. Okla. Oct. 2, 2012). The Court finds this rationale persuasive, because to allow Plaintiffs to seek damages for medical bills which never amounted to a legal obligation to pay would amount to a windfall in favor of Plaintiffs. Accordingly, the Court finds that Plaintiff's may not present evidence of billed amounts in support of compensatory damages. *See* Fed. R. Evid. 402, 403.

**C. Statco's Motion to Exclude Testimony of J. Kenneth Blundell**

It is now well established that Fed. R. Evid. 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts. *Id.* at 592–93. The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)(quoting *Daubert*, 509 U.S. at 592).

To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." 509 U.S. at 590. In other words, "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Id.* "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

To assist in the assessment of reliability, the Supreme Court has listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert,* 509 U.S. at 593–94. As noted, the list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kuhmo Tire,* 526 U.S. at 150. ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* ... Too much depends upon the particular circumstances of the particular case at issue.").

Generally, the district court should focus on an expert's methodology rather than the conclusions it generates. *Daubert*, 509 U.S. at 595. However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap

between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."). Under *Daubert,* "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782 (quoting *In re Paoli RR. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994). It is critical that the district court determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id.* at 783 (quoting *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Khumo Tire*, 526 U.S. at 152.

At a hearing held on February 4, 2014, the Court heard testimony from Dr. Blundell regarding his qualifications and the methodology used to reach his conclusions. Further, the Court asked the parties to submit supplemental briefs in light of the testimony given by Dr. Blundell. The Court finds Dr. Blundell to be a highly qualified engineer, with experience and training relevant to the issues in this case. The Court also finds the majority of Dr. Blundell's conclusions, including, but not limited to, the need for a redundant manual valve, to be based on sufficiently reliable methodology—with the exception of Dr. Blundell's opinion regarding the reason for CV10101's "transient fault."

Dr. Blundell's testimony on the subject of CV10101's failure revealed a glaring analytical gap.  Air-controlled valves, such as CV10101, are held shut by a powerful spring attached to the valve and opened by pressurizing air contained in hoses also attached to the valve.  By design, when the Process System is powered down, the air pressure holding the valve open is released and the force of the spring closes CV10101.  In explaining CV10101's failure during the *Daubert* hearing, Dr. Blundell opined that debris from the process system prevented the valve from closing, allowing the scalding water to escape.  Dr. Blundell also explained that the presence of debris could not be verified because it was likely washed away by the water during the accident.  However, a photograph taken immediately after the accident shows CV10101 open, even after all of the water had drained from the tank and the system is purportedly powered down.  Without debris or pressurized air to hold CV10101 open, logic dictates that the powerful spring attached to CV10101 would have closed the valve.  When asked why the valve remained open under these circumstances, Dr. Blundell could offer no explanation.  Given the flawed logic underlying Dr. Blundell's opinion regarding CV10101's temporary failure, the Court finds that Dr. Blundell's opinions regarding CV10101's "transient fault" must be excluded.

Accordingly, the Court finds that Statco's Motion to Exclude Testimony of J. Kenneth Blundell [Doc. No. 131] is **GRANTED in part, DENIED in part**.

## D.  Plaintiffs' Motion to Strike or Exclude Evidence Untimely Disclosed by Defendant[2]

### 1.  Computer-Generated Animations

Statco wishes to utilize computer-generated animation to help the jury understand the circumstance of Mr. Tate's accident.  At a hearing on the matter, Statco conceded that two of the

---

[2] Plaintiffs' Motion to Strike or Exclude Evidence Untimely Disclosed by Defendant included a request to exclude certain exhibits.  In light of the Court rulings since the Motion was filed, Plaintiffs' request to exclude certain exhibits [Doc. No. 162, 5-7] is **STRICKEN**, to be re-urged at the time of trial if appropriate.

three animations, which endeavor to demonstrate the actions Mr. Tate should have taken in order to avoid being injured on the day of his accident, should not be admitted due to the late disclosure of these animations. Therefore, the Court must only consider whether the first animation is admissible. Plaintiffs object to the use of this animation because it was not disclosed in a timely manner and is not an accurate depiction of the conditions at the time of Mr. Tate's accident.

The party trying to use the animation should ensure its accuracy and allow all interested parties—the court, the expert, and the opposing side—to satisfy themselves that the animation is a trustworthy depiction, not a speculative re-enactment. *See Illegality Defense to Action by Commercial Landlord for Collection of Rent*, 42 Am. Jur. Proof of Facts 3d 413 § 12. A computer-generated video animation is admissible as demonstrative evidence when the proponent shows the animation is authentic, relevant, fair, and accurate representation of the evidence to which it relates, and its probative value substantially outweighs the danger of unfair prejudice, confusing the issues, or misleading the jury. *Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528, 536 (2000).

The Court finds that Statco failed to establish that the animation is a fair representation of the circumstances surrounding Mr. Tate's injury. Significantly, the animation emphasizes certain sounds that should have alerted Mr. Tate that the process system was powered down. However, it is undisputed that the noise level at the plant was significant enough to call Mr. Tate's ability to hear these noises into question. In fact, the parties agree that Sigma issued employees ear plugs as a part of their personal protective equipment, which also suggests that Mr. Tate would have been unable to hear the sounds emphasized in the animation. Therefore,

the Court finds the animations inadmissible as demonstrative evidence. *See* Fed. R. Evid. 402, 403.

**E. Plaintiffs' Motion in Limine Regarding Defendant's Trial Exhibit Numbers 45, 51, 52**

Statco seeks to use a mock-up of the Process System (Exhibit No. 45), photographs of Exemplar Mock-up (Exhibit No. 51), and a demonstration of fly wheel using model (Exhibit No. 52) as a demonstrative evidence at trial. Plaintiffs' argue the mock-up is inadmissible due to Statco's untimely disclosure of the mock-up and the unrepresentative nature of the mock-up. There is substantial disagreement regarding when Statco first made Plaintiffs aware of its intent to use the mock-up. However, it is undisputed that as of the January 30, 2014 Pretrial Conference, the mock-up was not available for inspection by Plaintiffs, their counsel, or their expert. While Statco arguably may have put Plaintiffs on notice that a mock-up of the Process System was forthcoming, the specific nature and qualities of any such mock-up were not known to Plaintiffs prior to the January 30, 2014 Pretrial Conference. Under these circumstances, Plaintiffs had no opportunity to have the appropriate parties inspect the mock-up of the Process System in order to verify its similarity to the actual Process System or challenge its use on other grounds.[3] These same concerns also apply to the photographs of and demonstration using the Process System mock-up. Therefore, Plaintiff's Motion in Limine Regarding Defendant's Trial Exhibit Numbers 45, 51, and 52 [Doc. No. 176] is **GRANTED.**

**F. Issues Raised at the Pretrial Conference**

**1. OSHA Regulations and Investigation**

Plaintiffs' requests a ruling regarding the admissibility of OSHA regulations and investigation reports. Plaintiff's concede that "it may be proper to admit portions of OSHA

---

[3] The Court also notes that Plaintiffs' expert, Dr. Blundell, is unavailable from January 30, 2014, until February 10, 2014, the date this matter is set for trial, due to previously scheduled travel plans.

reports if this Court determines it is trustworthy pursuant to Fed. R. Evid. 803 and that its relevance outweighs the risk of [unfair] prejudice under Fed. R. Evid. 403." [Doc. No. 180, 8.] Due to the fact-specific nature of the issue of whether OSHA regulations or investigation reports are admissible in this action, the Court reserves judgment on this issue until the time of trial.

## 2. Testimony of John D. Martins, Ph.D.

Plaintiffs seek to prevent Statco from calling John. D. Martins, Ph.D. as an expert witness in this case. At the January 30, 2014 Pretrial Conference, Statco indicated its intent to rely on the expert opinions of Dr. Martins. Dr. Martins was retained by Defendant Process Automation Design, Inc. ("PAI") and submitted an expert report as required by Fed. R. Civ. P. 26(a)(2)(B) in his capacity as an expert for PAI. Rule 26(a)(2) provides, in relevant part, the following:

> **(2) Disclosure of Expert Testimony.**
>
> **(A) In General.** In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> **(B) Witnesses Who Must Provide a Written Report.** Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case … .

The Court finds that while Dr. Martins was designated as an expert for PAI, he was never properly designated as an expert for Statco as required by Rule 26(a)(2). As such, Plaintiffs were not properly put on notice of the potential need to depose Dr. Martins or seek a rebuttal expert with regard to Dr. Martins' opinions in relation to the positions taken by Statco in this lawsuit. Accordingly, the Court finds that Statco may not rely upon Dr. Martins to offer expert opinions, as contemplated by Fed. R. Evid. 702, at trial.

### 3. Sigma's Accident Investigation

Plaintiffs seek to exclude evidence regarding Sigma's investigation into Mr. Tate's accident. Following Mr. Tate's accident, Sigma conducted an accident investigation and memorialized its results in an Sigma's Supervisor's Accident Investigation Report ("Accident Investigation Report") [Doc. No. 180, Ex. 3.] The Accident Investigation Report concludes that the cause of the accident was Mr. Tate's failure to drain the tank before working on the pump. [*Id.*] The investigation and resulting report were prepared by Don Schiltz and James Trusley in their capacity as Sigma employees.

Plaintiff objects to testimony or other evidence regarding this investigation on the grounds that it is expert testimony under Fed. R. Evid. 702 and Statco failed to timely disclose Messrs. Schiltz or Trusley as required by Fed. R. Civ. P. 26(a)(2). The Court finds that the opinions of Messrs. Schiltz and Trusley regarding the ultimate cause of Mr. Tate's accident are expert opinions under Fed. R. Evid. 702. Consequently, because Statco did not comply with Fed. R. Civ. P. 26(a), Messrs. Schiltz and Trusley may not testify as expert witnesses. Accordingly, any reference to, testimony regarding, or admission of the Accident Investigation Report is excluded.

### G. Statco's Motion to Permit the Jury to View the Scene

Statco requests permission from the Court to allow the jury to view the scene of Plaintiff's accident, as an alternative to allowing the use of Statco's mock-up of the Process System. As outlined above, the Court finds that Statco's mock-up is inadmissible as demonstrative evidence, and, consequently, must now consider Statco's request to allow the jury to visit the Sigma plant in Seminole, Oklahoma.

While there is no specific federal rule with respect to permitting a jury to view the premises of an accident, courts have long recognized their inherent power to grant inspection of

premises. *Fitzpatrick v. Sooner Oil Co.*, 212 F.2d 548 (10th Cir. 1954). Whether the jury is permitted to view the scene of an accident outside the courtroom is a matter for the discretion of the trial court. *See United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir. 1987). A court generally acts within that discretion in denying a motion for a view when there is sufficient evidence describing the scene in the form of testimony, diagrams, or photographs. *See United States v. Pettiford*, 962 F.2d 74, 76 (1st Cir. 1992); *United States v. Drougas*, 748 F.2d 8, 31 (1st Cir. 1984). In making this determination, the court should consider such factors as the orderliness of the trial, whether the jury would be confused or misled without permitting the view, whether it would be logistically difficult, who will pay for the transportation, and whether cross-examination will be permitted regarding the details of the scene and/or object. *See e.g.*, *id.*; *United States v. Passos–Paternina*, 918 F.2d 979, 986 (1st Cir. 1990); *Bundy v. Dugger*, 850 F.2d 1402, 1422 (11th Cir. 1988). In addition, the Court must consider whether alternative means such as demonstrative exhibits, photographs, and/or diagrams are readily available to assist the trier of fact. *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997).

Plaintiff opposes this request based primarily on safety, confidentiality and propriety concerns, and expense. [Doc. No. 180, 13.] Furthermore, Sigma, through its General Counsel Wade Swanson, has indicated to the parties that it strongly opposes such a visit for many of the same reasons. [*Id.* at Ex. 13.] Mr. Swanson indicated that if the Court permitted a site visit, Sigma would seek emergency reconsideration of the matter. After considering all of the circumstances of this case, the Court finds that allowing the jury to visit the Sigma plant is not practically feasible or necessary. Accordingly, Statco's Motion for Jury to Examine Scene [Doc. No. 170] is **DENIED.**

## CONCLUSION

After review of the briefs, and for the reasons explained above, Statco Motion in Limine [Doc. No. 80] is **GRANTED in part, DENIED in part**; Plaintiffs' Motion in Limine [Doc. No. 106] is **GRANTED in part, DENIED in part**; Statco's Motion to Exclude Testimony of J. Kenneth Blundell [Doc. No. 131] is **GRANTED in part, DENIED in part**; Plaintiffs' Motion to Strike or Exclude Evidence Untimely Disclosed by Statco [Doc. No. 162] is **GRANTED in part, DENIED in part**; Plaintiffs' Motion in Limine Regarding Defendant's Trial Exhibit Numbers 45, 51, and 52 [Doc. No. 176] is **GRANTED;** and Statco's Motion to Permit Jury to View Scene [Doc. No. 178] is **DENIED**.  Further, the Court's rulings on various legal issues raised at the Pretrial Conference held on January 30, 2014, and briefed in the parties supplemental trial briefs are outlined above.

IT IS SO ORDERED this 7th day of February, 2014.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma